UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>            the Government(s),<br>    v.<br><br>DEEP RIVER LANDING, LLC, et al.,<br><br>            Defendant(s). | CASE NO. C25-5307-KKE<br><br>ORDER ON MOTION TO DISMISS |

This action stems from an oil spill that was first reported on November 4, 2021 in the Deep River, a tributary to the Lower Columbia River Estuary. After utilizing funds from the Oil Spill Liability Trust Fund ("OSLTF") to respond to and clean up the oil spill, the Government brought this action under the Oil Pollution Act of 1990, 33 U.S.C. §§ 2701–2720 ("OPA"), against Deep River Landing, LLC ("Deep River Landing") and Luke Gardner. Dkt. No. 1. The OPA subjects "each responsible party for a vessel … from which oil is discharged, or which poses the substantial threat of a discharge of oil, into or upon the navigable waters or adjoining shorelines" to liability "for the removal costs and damages" resulting from such incident. 33 U.S.C. § 2702(a). A "responsible party" includes "any person owning" or "operating" the vessel. *Id.* § 2701(32)(A). Defendant Gardner moved to dismiss the Government's claims against him with prejudice for failure to state a claim. As detailed below, the Court finds the Government sufficiently pleads that Gardner is a vessel owner or operator under the OPA, and thus denies Gardner's motion.

ORDER ON MOTION TO DISMISS - 1

# I. BACKGROUND

## A. The Oil Spill

On November 4, 2021, an individual reported to the Washington State Department of Ecology ("Department of Ecology") that a barge appeared to be leaking an oily substance into the Deep River. Dkt. No. 15 ¶ 23. According to the report filed with the Department of Ecology, the barge was located on property owned by Deep River Landing, a local commercial fish buyer, and investigators dispatched to the scene "found a black substance on blackberry bushes along the Deep River but no sheen." *Id.* ¶¶ 22, 23. Pollution responders from the United States Coast Guard, Sector Columbia River Incident Management Division ("IMD") were also dispatched, and "observed a sheen in the water," and that, at low tide, "the barge rested in the mud with oil discharging out of a hole in the bottom of the barge." *Id.* ¶ 24.

IMD subsequently appointed a Federal On Site Coordinator ("FOSC"), which used funds from the OSLTF to remove the oil and mitigate the threat of future oil discharges from the barge. *Id.* ¶¶ 24–25. When contractors arrived to remove the oil, they discovered two 15-foot-by-14-foot-long compartments that each contained eight to twelve inches of "an emulsified mixture of diesel and lube oil." *Id.* ¶ 26. By late December 2021, the barge and oil were removed from the water. *Id.* ¶ 27. After additional surveying and cleanup efforts, roughly 3,231 gallons of oil were recovered from the barge, and an estimated 36 gallons of oil had seeped from the barge into the Deep River. *Id.* The Government estimates it incurred $1,221,178 in response and recovery costs directly related to the barge pollution incident. *Id.* ¶ 28.

## B. Gardner's Relationship to the Barge

According to the Government, between June 2017 and October 2018, Gardner moved the barge onto property owned by Deep River Landing, and continued to use the barge as a vessel afterward. *Id.* ¶ 22. The Government asserts that Gardner owned both the barge and the property

ORDER ON MOTION TO DISMISS - 2

to which it was moored, and that he "managed," "controlled," and "operated" the barge. *Id.* ¶¶ 14–18. The Government further alleges that both Defendants used the barge to transport people and/or goods. *Id.* ¶ 20. Finally, the Government alleges that Gardner is an officer and/or owner of Deep River Landing, and that Deep River Landing and Gardner "were agents of each other and/or alter egos and are therefore responsible and liable, jointly, and severally, for all of each of the others' obligations, acts, omissions, and strict liability[.]" *Id.* ¶ 21.

## II.   ANALYSIS

### A.   Legal Standard

In evaluating a motion to dismiss under Rule 12(b)(6), a court examines the complaint to determine whether, assuming the facts alleged are true, the plaintiff has stated "a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). A claim is plausible if "the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.*

To survive a motion to dismiss for failure to state a claim, a complaint generally must satisfy only the minimal notice pleading requirements of Federal Rule of Civil Procedure 8. Rule 8(a)(2), in turn, requires only that the complaint include a "short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). Specific facts are unnecessary: the statement need only give the defendant "fair notice of the claim and the grounds upon which it rests." *Erickson v. Pardus,* 551 U.S. 89, 93 (2007) (citing *Twombly,* 550 U.S. at 555).

### B.   The Oil Pollution Act

The OPA creates a strict liability regime for parties responsible for oil spills, subject to certain exceptions. *See* 33 U.S.C. § 2702(a); *Clausen v. M/V New Carissa*, 339 F.3d 1049, 1052

ORDER ON MOTION TO DISMISS - 3

(9th Cir. 2003). To establish liability, the Government must prove: (1) that the defendant is a "responsible party"; (2) that oil was discharged or that the incident posed a substantial threat of discharge; and (3) that the actual or threatened discharge occurred in navigable waters or adjoining shorelines. 33 U.S.C. § 2702(a).

As to vessels,[1] the OPA defines a "responsible party" as "any person owning, operating, or demise chartering the vessel." *Id.* § 2701(32)(A). An "owner or operator" is, "in the case of a vessel, any person owning, operating, or chartering by demise, the vessel." *Id.* § 2701(26)(A)(i). A "person" under the OPA can be "an individual" or "corporation." *Id.* § 2701(27). The OPA defines a "vessel" as "every description of watercraft or other artificial contrivance used, or capable of being used, as a means of transportation on water, other than a public vessel." *Id.* § 2701(37).

In construing who is an "operator" under the OPA, courts routinely look to the operator liability framework set forth in the Comprehensive Environmental Response, Compensation, and Liability Act ("CERCLA"), an environmental statute that is structurally similar to OPA and establishes strict liability for polluters. *See United States v. Nature's Way Marine, L.L.C.*, 904 F.3d 416, 420 (5th Cir. 2018) (observing that OPA and CERCLA define "operator" "with the exact same language"); *see also United States v. Ships Int'l Inc.*, 779 F. Supp. 3d 1235, 1237 (W.D. Wash. 2025) (noting the common legislative purpose and structure of OPA and CERCLA). In particular, courts apply the Supreme Court's reasoning in *United States v. Bestfoods*, 524 U.S. 51 (1998), which considered operator liability in the CERCLA context, to the OPA operator liability

---

[1] Although Gardner does not explicitly dispute the barge's status as a "vessel" under the OPA as part of his motion to dismiss, he asserts that what the Government calls the "Deep River Barge" is a "Float" and "does not concede whether the Float is in fact a barge … or whether such an object is subject to OPA as a 'vessel.'" Dkt. No. 18 at 1 n.1, Dkt. No. 24 at 2 n.1. Because the Court construes the alleged facts to be true, and because Defendant does not contest, at this point, whether the barge is a "vessel" under the OPA, the Court will not address whether the barge is a vessel in this Order.

ORDER ON MOTION TO DISMISS - 4

context. *See, e.g.*, *Nature's Way Marine, L.L.C.*, 904 F.3d at 420; *see also Ships Int'l*, 779 F. Supp. 3d at 1237. Recognizing the circularity of CERCLA's definition of "owner or operator," the Supreme Court expanded on the "natural meaning" definition of "operator" as follows:

> [A]n operator must manage, direct, or conduct operations specifically related to pollution, that is, operations having to do with the leakage or disposal of hazardous waste, or decisions about compliance with environmental regulations.

*United States v. Bestfoods*, 524 U.S. 51, 66–67 (1998). "In a mechanical sense, to 'operate' ordinarily means '[t]o control the function of; run: operate a *sewing machine*.'" *Id.* at 66. "[T]he common purposes and shared history of CERCLA and OPA further suggest that OPA's responsible party language should be read broadly," and operator liability "may extend to those who exercise joint or practical control over vessel operations." *Ships Int'l*, 779 F. Supp. 3d at 1237 (citation modified) (collecting cases).

C.  **Responsible Party Under the OPA**

    1.  <u>Potential direct liability as an owner or operator</u>

Gardner asserts that the Government's allegations are insufficient to show that he is either an owner or operator under the OPA. The crux of Gardner's argument is that the Government's amended complaint consists of mere "conclusory labels," as to each. Dkt. No. 18 at 6–8, Dkt. No. 24 at 7–8.

    a.  *The Government sufficiently alleges that Gardner is an owner under the OPA.*

Gardner argues that the Government "failed to allege any facts … to make ownership plausible," and suggests that the Government could have identified "title documents" or made other "assertions of ownership by Mr. Gardner, personally." Dkt. No. 18 at 8, Dkt. No. 24 at 4. Without citing any authority, Gardner argues that absent such factual allegations, the

Government's assertion that Gardner owns the barge is a "bare legal conclusion." Dkt. No. 18 at 8.

The Court finds that the Government has pled sufficient facts to make Gardner's status as a vessel owner plausible. To begin, the Government affirmatively asserts that Gardner owned the barge at "all material times." Dkt. No. 15 ¶ 14. The Government also alleges that Gardner personally moved the barge onto property owned by Deep River Landing—a limited liability corporation that "Gardner is and continues to be an officer and/or owner of"— between 2017 and 2018, and continued to use the barge afterward as a vessel, including "to transport people and/or goods on water." Dkt. No. 15 ¶¶ 19–22. That Gardner personally moved the barge onto property owned by his corporation, Deep River Landing LLC, and used the barge to transport people or items on the water from 2018 onward, supports an inference of Gardner's ownership of the barge during the 2021 oil pollution incident.

    b.  *The Government sufficiently alleges that Gardner is an operator under the OPA.*

The Government relies on two allegations to support that Gardner is an operator under the OPA: (1) that Gardner owned and operated the barge; and (2) that Gardner operated the barge to move it onto Deep River Landing's property, and continued to use and exercise control of it afterward. *Id.* ¶¶ 14–17, 22.

Gardner argues that such contentions are insufficient, and that the Government must allege specific facts "to demonstrate how Mr. Gardner was 'personally involved with or personally responsible for the operations specifically related to pollution in order to establish liability.'" Dkt. No. 18 at 7 (citing *City of W. Sacramento, California v. R & L Bus. Mgmt.*, No. 2:18-CV-900 WBS EFB, 2018 WL 6019340, at *2 (E.D. Cal. Nov. 16, 2018)). Gardner's reliance on *City of West Sacramento* is misplaced. There, the court explained pleading requirements to establish operator

ORDER ON MOTION TO DISMISS - 6

liability as to a company's president who was altogether removed from the facility where hazardous substances were disposed. But here, the Government has alleged that Gardner has physically exerted control over the barge, which was the source of the oil spill, including by using it to transport goods and people, at multiple points in time.

Gardner also cites[2] *Gregory Village Partners, L.P. v. Chevron U.S.A., Inc.* for the proposition that an allegation of owner/operator status is a "legal conclusion … not entitled to a presumption of truth." Dkt. No. 18 at 7 (citing *Gregory Vill. Partners, L.P. v. Chevron U.S.A., Inc.*, 805 F. Supp. 2d 888, 897 (N.D. Cal. 2011)). First, the Court disagrees with Gardner's characterization of the Government's complaint as failing to plead any supportive facts as to owner or operator status. Moreover, *Gregory Village* is distinguishable from this case. In *Gregory Village*, the court found ownership allegations to be insufficient where it was unclear that the defendant owned the relevant parcel of land at the time the pollution incident took place. *Gregory Village*, 805 F. Supp. 2d at 897 ("The complaint does not clearly allege that a release of [pollutants] occurred on the Northern Parcel between 1986 and 2003, the only period when Chevron owned that parcel"). In other words, the *Gregory Village* court found the plaintiff's failure to allege ownership at the relevant time to be insufficient—not the allegation of ownership itself. Unlike *Gregory Village*, here, the Government asserted that Gardner owned the barge at all times relevant to the pollution incident, and that he continued to use the barge as a vessel after moving it onto his company's property in, at the latest, 2018. Because the oil pollution incident occurred in 2021— a time during which the Government asserts Gardner continued to own the barge (which was the source of the oil spill), use the barge for transportation purposes, and store it on his company's

---

[2] Though Gardner cites this case in support of his argument on operator liability, the Court notes that the portion of the *Gregory Village* deals with owner liability.

ORDER ON MOTION TO DISMISS - 7

property—it is plausible that Gardner had sufficient control over the barge to be an owner and/or operator at the time of the incident. *See Bestfoods*, 524 U.S. at 66.

In sum, the Government has sufficiently alleged that Gardner is an operator under the OPA.

2. <u>Potential alter ego liability</u>

Defendant Gardner asserts that the Government's claims against Gardner must be dismissed because its "theories of agency/alter ego liability are invalid" and improperly seek to pierce the corporate veil as to Deep River Landing. Dkt. No. 18 at 4, Dkt. No. 24 at 8. Gardner specifically argues that the Government has not pleaded sufficient facts to support piercing the corporate veil here. Dkt. No. 18 at 4–5. The Government counters that Gardner's argument is an improper basis for a motion to dismiss under Fed. R. Civ. P. 12(b)(6) because its alter ego allegations do "not give rise to a standalone cause of action." Dkt. No. 23 at 5 (citing *54 Dyer LP v. Ambruso*, 2:21-CV-09306-SVW-SK, 2022 WL 1840344, at *2 (C.D. Cal. Mar. 21, 2022)). The Court agrees with the Government.

Asserting that one defendant is the "alter ego" of another does not form an independent cause of action, but "is only a means of imposing liability for an underlying cause of action[.]" *Hadnagy v. Moss*, 2:23-CV-01932-BAT, 2024 WL 1328568, at *6 (W.D. Wash. Mar. 28, 2024) (citing *Local 159, 342, 343 & 444 v. Nor-Cal Plumbing, Inc.*, 185 F.3d 978, 985 (9th Cir. 1999) ("A request to pierce the corporate veil is only a means of imposing liability for an underlying cause of action and is not a cause of action in and of itself.")). While "alter ego allegations are sufficient to raise a factual issue as to whether the doctrine should apply, a finding of fact of alter ego, standing alone, creates no cause of action." *54 Dyer LP*, 2022 WL 1840344, at *2 (citation modified) (citing 1 Fletcher Cyclopedia of Corporations, § 41.10, n.13–15 (2021)). Indeed, the Government's amended complaint asserts its alter ego theory only as part of its general allegations:

ORDER ON MOTION TO DISMISS - 8

it does not assert an independent cause of action of "alter ego" against either Deep River Landing or Gardner.  *See* Dkt. No. 15 ¶ 21.

Accordingly, the Court will not dismiss the Government's claims against Gardner on this basis.

### III.  CONCLUSION

For these reasons, the Court denies Gardner's motion to dismiss.

Dated this 13th day of January, 2026.

Kymberly K. Evanson
United States District Judge